**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

WESTERN DIGITAL CORPORATION &
SUBSIDIARIES,

            Plaintiff,

    v.

UNITED STATES OF AMERICA,

            Defendant.

Case No. 26-215 T
(Judge David A. Tapp)

<u>**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**</u>

Saul Mezei
Jonathan C. Bond
John F. Craig, III
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
Telephone: 202.955.8500
Facsimile: 202.467.0539
SMezei@gibsondunn.com
JBond@gibsondunn.com
JCraig@gibsondunn.com

*Attorneys for Plaintiff*

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................... 1

STATEMENT ........................................................................................................................... 2

    A.    Western Digital's Fiscal Year 2008 Federal Income Tax ..................................... 2

    B.    The COVID-19 Disaster, The Stafford Act Declarations, And Section 7508A ............................................................................................................... 3

    C.    Procedural History .............................................................................................. 6

LEGAL STANDARD ............................................................................................................... 6

ARGUMENT ............................................................................................................................ 6

    I.    Section 7508A(d) Entitles Western Digital To A Refund Of Underpayment Interest It Paid That Accrued Between January 20, 2020, And July 10, 2023 ........................................................................................... 7

        A.    Western Digital Is A "Qualified Taxpayer" ............................................ 8

        B.    The Period From January 20, 2020, To July 10, 2023, "Shall Be Disregarded" Under Section 7508A(d) In Determining Interest Owed By Western Digital ............................................................................ 9

    II.    There Is No Lawful Basis To Limit Western Digital's Refund To Any Shorter Period ......................................................................................... 12

        A.    The Period Disregarded Under Section 7508A(d) Is Not Limited To 60 Days ............................................................................................. 12

        B.    The Period Disregarded Under Section 7508A(d) Is Not Limited To One Year ............................................................................................. 14

CONCLUSION ....................................................................................................................... 17

**TABLE OF AUTHORITIES**

**Cases**                                                                      **Page(s)**

*3M* v. *Commissioner*,
154 F.4th 574 (8th Cir. 2025) ...............................................................................11

*Abdo* v. *Commissioner*,
162 T.C. 148 (2024) ....................................................................................10, 11, 15

*Bufkin* v. *Collins*,
604 U.S. 369 (2025) ...............................................................................................14

*Kwong* v. *United States*,
179 Fed. Cl. 382 (2025) ...............................................................12, 13, 14, 15, 16

*Landgraf* v. *USI Film Products*,
511 U.S. 244 (1994) ...............................................................................................14

*Local Oklahoma Bank, N.A.* v. *United States*,
452 F.3d 1371 (Fed. Cir. 2006) ...............................................................................6

*Loper Bright Enterprises* v. *Raimondo*,
603 U.S. 369 (2024) .........................................................................................11, 15

*Nestlé USA, Inc.* v. *Doe*,
593 U.S. 628 (2021) ...............................................................................................14

*Oncale* v. *Sundowner Offshore Services, Inc.*,
523 U.S. 75 (1998) .................................................................................................17

*Pennsylvania Department of Corrections* v. *Yeskey*,
524 U.S. 206 (1998) ...............................................................................................17

*PGA Tour, Inc.* v. *Martin*,
532 U.S. 661 (2001) ...............................................................................................17

*United States* v. *Will*,
449 U.S. 200 (1980) ...............................................................................................14

*Utility Air Regulatory Group* v. *EPA*,
573 U.S. 302 (2014) .........................................................................................11, 15

*Western Digital Corp.* v. *Commissioner*,
No. 18984-18 (T.C. Feb. 22, 2023) .........................................................................2

**Statutes**                                                                                   **Page(s)**

Further Consolidated Appropriations Act, 2020,
    Pub. L. No. 116-94, 133 Stat. 2534 (2019):

    § 205, 133 Stat. 3245 ....................................................................................4, 5, 7

Infrastructure Investment and Jobs Act,
    Pub. L. No. 117-58, 135 Stat. 429 (2021):

    § 80501, 135 Stat. 1335 ....................................................................................5, 13

Stafford Disaster Relief and Emergency Assistance Act,
    Pub. L. No. 100-707, 102 Stat. 4689 (1988) (42 U.S.C. § 5121 *et seq.*):

    § 401, 102 Stat. 4696 (42 U.S.C. § 5170) ..............................................................3

    § 402, 102 Stat. 4696 (42 U.S.C. § 5170a) ............................................................3

    § 403, 102 Stat. 4697 (42 U.S.C. § 5170b) ...........................................................3

    § 501, 102 Stat. 4706 (42 U.S.C. § 5191) ..............................................................3

Taxpayer Relief Act of 1997,
    Pub. L. No. 105-34, 111 Stat. 788:

    § 911, 111 Stat. 877 ..............................................................................................4

Victims of Terrorism Tax Relief Act of 2001,
    Pub. L. No. 107-134, 115 Stat. 2427:

    § 112, 115 Stat. 2433 ..........................................................................................10

26 U.S.C. § 165....................................................................................................5, 8

26 U.S.C. § 6611......................................................................................................12

26 U.S.C. § 6404......................................................................................................10

26 U.S.C. § 6532........................................................................................................6

26 U.S.C. § 7508A....................................................................................1, 4, 7, 8, 9, 10

26 U.S.C. § 7508A (2019) .........................................1, 4, 5, 7, 8, 9, 10, 11, 12, 13, 15

**Regulations**

26 C.F.R. § 301.7508A-1...............................................................................11, 12, 15, 16

86 Fed. Reg. 31,146 (June 11, 2021) ................................................................10, 14, 15

**Rules**                                                                                                        **Page(s)**

RCFC 56 ...................................................................................................................................6

**Other Authorities**

85 Fed. Reg. 20,703 (Apr. 14, 2020) ...........................................................3, 4, 9, 12, 13

88 Fed. Reg. 8884 (Feb. 10, 2023) ...................................................................6, 9, 13

President Donald J. Trump, *Letter to Federal Agencies on an Emergency Determination for the Coronavirus Disease 2019 (COVID–19) Pandemic Under the Robert T. Stafford Disaster Relief and Emergency Assistance Act* (Mar. 13, 2020), https://perma.cc/UE37-AYDS ......................................................3

**APPENDIX**

| Exhibit | Page(s) | Document Description |
|---------|---------|----------------------|
| A | 1-3 | Declaration of Robert Stockton (Apr. 8, 2026) |
| B | 4-6 | *Western Digital Corp.* v. *Commissioner*, No. 18984-18 (T.C. Feb. 22, 2023) |

**INTRODUCTION**

Plaintiff Western Digital Corporation & Subsidiaries paid approximately $20,764,747 in underpayment interest on its federal income tax for its fiscal year ended June 27, 2008 (FY 2008) that accrued while California was a federally declared disaster area during the COVID-19 pandemic. The plain text of the Internal Revenue Code barred interest from accruing in that period and requires a refund.

Two provisions of 26 U.S.C. § 7508A work in tandem to give taxpayers relief during a federally declared disaster. Section 7508A(a) has long provided that the Treasury Secretary "*may* specify a period of up to one year that may be disregarded in determining," *inter alia*, "the amount of any interest" on federal taxes owed by taxpayers affected by such a disaster. 26 U.S.C. § 7508A(a)(2) (emphasis added). In December 2019, Congress went beyond giving the agency discretion to grant affected taxpayers relief by adding Section 7508A(d), which *mandates* exclusion of the whole disaster period (and more) for statutorily defined "qualified taxpayer[s]." *Id.* § 7508A(d)(1) (2019). In the version of that provision applicable here, Congress provided that the incident period specified in a presidential disaster declaration and "60 days after * * * *shall be* disregarded in the same manner as a period specified under subsection (a)" for taxpayers located in the disaster area. *Ibid.* (emphasis added). COVID-19 struck just a few months later, precipitating an unprecedented disaster declaration for every State lasting more than three years.

Western Digital is entitled to the relief Congress made mandatory in Section 7508A(d). All material facts are undisputed. Western Digital was a taxpayer with its principal place of business in California for the entire duration of a presidentially declared disaster covering that whole State that began January 20, 2020, and ended May 11, 2023. The plain terms of Section 7508A(d) require the IRS to disregard that whole period, plus another 60 days, in determining the amount of any interest owed by Western Digital—as relevant here, underpayment interest on its FY 2008

1

federal income tax.  Section 7508A(d)'s straightforward, automatic command compels summary judgment for Western Digital and a refund in the amount of interest that accrued during the disaster period plus 60 days, plus interest on its overpayment.

## STATEMENT

### A.    Western Digital's FY 2008 Federal Income Tax

Western Digital is a data-storage company headquartered in California at all relevant times. Ex. A, ¶¶ 2-3.  Western Digital develops, manufactures, and sells hard-disk drives for a range of applications, such as desktop and mobile personal computers and servers.

Western Digital filed a consolidated federal income-tax return for FY 2008.  Complaint (Dkt. 1) ¶ 11; Answer (Dkt. 10) 2.  On June 28, 2018, the Internal Revenue Service sent Western Digital a notice of deficiency asserting that Western Digital understated its federal income taxes for FY 2008 by $513,231,527.  Complaint ¶ 12; Answer 2.  Disagreeing with that view, Western Digital timely petitioned the Tax Court for redetermination in September 2018.  Complaint ¶ 13; Answer 2.

Western Digital and the IRS settled their dispute regarding FY 2008 in 2023.  Complaint ¶ 18; Answer 2.  The Tax Court entered an order approving the "agreement of the parties in th[at] case" that Western Digital was liable for a smaller deficiency on its FY 2008 income taxes "in the amoun[t] of $53,635,842"—just over 10% of the amount the IRS had originally asserted. Ex. B. (Tax Court Decision in *Western Digital Corp.* v. *Commissioner*, No. 18984-18 (T.C. Feb. 22, 2023)).

On July 3, 2023, the IRS billed Western Digital $106,598,473.76 for its FY 2008 taxes. Complaint ¶ 20; Answer 2.  That amount consisted of the $53,635,842 tax deficiency to which the parties agreed, plus $52,962,631.76 in underpayment interest that had accrued from September 16, 2008, through July 3, 2023.  Complaint ¶ 20; Answer 2.

2

**B.      The COVID-19 Disaster, The Stafford Act Declarations, And Section 7508A**

*The President's COVID-19 Stafford Act Declarations.*  In early 2020, while the FY 2008 dispute proceeded in the Tax Court, the COVID-19 pandemic struck.  The President responded in part by issuing disaster declarations in March 2020 under the Robert T. Stafford Disaster Relief and Emergency Assistance Act (Stafford Act), 42 U.S.C. § 5121 *et seq.*

First, on March 13, 2020, the President made a determination under § 501(b) of the Stafford Act, 42 U.S.C. § 5191(b), that an "emergency exist[ed] nationwide" in light of the COVID-19 pandemic.  President Donald J. Trump, *Letter to Federal Agencies on an Emergency Determination for the Coronavirus Disease 2019 (COVID–19) Pandemic Under the Robert T. Stafford Disaster Relief and Emergency Assistance Act* (Mar. 13, 2020), https://perma.cc/UE37-AYDS.  The President "encourage[d] all governors  * * *  to consider requesting Federal assistance under [§ 401(a)] of the Stafford Act" and made clear that the President "st[ood] ready to expeditiously consider any such request."  *Ibid.*

Second, on March 22, following a request from California Governor Gavin Newsom, the President made a "determin[ation]" under § 401 of the Stafford Act, 42 U.S.C. § 5170, "that the emergency conditions in the State of California resulting from the Coronavirus Disease 2019 (COVID-19) pandemic beginning on January 20, 2020, and continuing, are of sufficient severity and magnitude to warrant a major disaster declaration under" the Stafford Act.  85 Fed. Reg. 20,703, 20,703 (Apr. 14, 2020).  Section 401 authorizes the President to declare a major disaster in a State "[b]ased on the request of a Governor" "of the affected State."  42 U.S.C. § 5170(a).  A major-disaster declaration unlocks a suite of statutory authorities to provide financial and other assistance to the State.  *E.g.*, *id.* §§ 5170a, 5170b.  The March 22 declaration stated that "a major disaster exist[ed] in the State of California" in light of the COVID-19 pandemic and authorized the Federal Emergency Management Agency (FEMA) to "allocate * * * funds" as "necessary for

3

Federal disaster assistance" and "to make changes to this declaration for the approved assistance." 85 Fed. Reg. at 20,703. (The President issued materially identical major-disaster declarations for all other States.)

*Section 7508A.*  The President's March 22 major-disaster declaration under the Stafford Act also triggered Internal Revenue Code provisions authorizing or requiring relief to taxpayers due to a disaster.  Specifically, the declaration implicated two subsections of 26 U.S.C. § 7508A.

First, Section 7508A(a) has long granted the Secretary of the Treasury discretion to grant relief to taxpayers affected by a disaster by disregarding the disaster period in making various specified determinations under the Code.  See Taxpayer Relief Act of 1997, Pub. L. No. 105-34, § 911(a), 111 Stat. 877-878 (codified as amended at 26 U.S.C. § 7508A(a)).  Section 7508A(a) provides that the Secretary "may specify a period of up to 1 year that may be disregarded in determining" certain matters—such as the deadline to file an income-tax return or to petition the Tax Court for review, the amount of any tax credit, and (relevant here) "the amount of any interest" on federal tax liabilities owed by certain taxpayers "affected by a federally declared disaster." 26 U.S.C. § 7508A(a).

Second, as in force at the times relevant here, Section 7508A(d)—which Congress added to the Code in late December 2019—required certain relief to taxpayers located in the disaster area. The version of Section 7508A(d) applicable here directed that, "[i]n the case of any qualified taxpayer, the period—(A) beginning on the earliest incident date specified in" a major-disaster declaration under the Stafford Act and "(B) ending on the date which is 60 days after the latest incident date so specified, *shall be disregarded* in the same manner as a period specified under [§ 7508A](a)."  Further Consolidated Appropriations Act, 2020, Pub. L. No. 116-94, § 205(a), 133 Stat. 3245 (codified at 26 U.S.C. § 7508A(d)(1) (2019)) (emphasis added).  A "qualified tax-

4

payer" included "any taxpayer if the taxpayer's principal place of business  * * *  is located in a disaster area." 26 U.S.C. § 7508A(d)(2)(B) (2019).  Section 7508A(d) incorporated the definition of "disaster area" from 26 U.S.C. § 165(i)(5)(B) "with respect to a Federally declared disaster," as that term is "defined in [§ 165(i)(5)(A)]." *Id.* § 7508A(d)(3) (2019).  Section 165(i)(5), in turn, defined a "Federally declared disaster" as "any disaster subsequently determined by the President of the United States to warrant assistance by the Federal Government under the [Stafford Act]" and "disaster area" as "the area so determined to warrant such assistance." *Id.* § 165(i)(5).  Section 7508A(d) made clear that the "[m]andatory" period it specifies "shall be in addition to (or concurrent with, as the case may be) any period specified under [§ 7508A](a)." *Id.* § 7508A(d)(5) (2019).

Congress expressly made new Section 7508A(d) immediately applicable, providing that it "shall apply to federally declared disasters declared after the date of the enactment of this Act," Pub. L. No. 116-94, § 205(b), 133 Stat. 3246 (26 U.S.C. § 7508A note (2019)), which was December 20, 2019, see 133 Stat. 3248.  In November 2021, Congress amended Section 7508A(d), including to shorten its period of mandatory taxpayer relief.  Infrastructure Investment and Jobs Act, Pub. L. No. 117-58, § 80501(a), 135 Stat. 1335.  But Congress explicitly made that 2021 amendment exclusively *prospective*, stating that it "shall apply to federally declared disasters declared *after* the date of enactment of this Act," *id.* § 80501(b), 135 Stat. 1335 (emphasis added), *i.e.*, November 15, 2021, see 135 Stat. 1467.  The original version of Section 7508A(d) thus continued to apply to federally declared disasters that were declared between December 20, 2019, and November 15, 2021—including the COVID-19 major disaster in California declared on March 22, 2020.

*End Of The COVID-19 Disaster.*  The COVID-19 disaster declared by the President lasted for more than three years.  As the pandemic finally waned in 2023, FEMA (as authorized by the

5

President) amended the Stafford Act major-disaster declarations for California and other States to provide that "the incident period for all COVID-19 major disaster declarations * * * will close effective May 11, 2023." 88 Fed. Reg. 8884, 8884 (Feb. 10, 2023). The additional 60-day window specified in Section 7508A(d)(1)(B) thus closed on July 10, 2023.

## C. Procedural History

Western Digital paid the IRS's $106,598,473.76 bill on August 9, 2023. Complaint ¶ 21; Answer 2. On July 21, 2025, Western Digital filed an administrative refund claim for the portion of that payment corresponding to the amount of interest that had accrued while California was a federally declared disaster area under the Stafford Act. Complaint ¶ 8; Answer 2. Western Digital also claimed a refund for overpayment interest on that amount. See Complaint Ex. 1 (Dkt. 1-2), at 7. The claim remains pending before the IRS. Complaint ¶ 9; Answer 2.

Western Digital timely filed suit to recover the same refund that it claimed in its administrative claim. See Complaint ¶¶ 1-3; see also 26 U.S.C. § 6532(a)(1) (authorizing refund suits in this Court "6 months" after "the date of filing" an administrative refund claim if the Secretary has not "render[ed] a decision thereon").

## LEGAL STANDARD

"Summary judgment is properly granted when * * * there is no genuine issue as to any material fact and * * * the moving party is entitled to judgment as a matter of law." *Local Oklahoma Bank, N.A.* v. *United States*, 452 F.3d 1371, 1376 (Fed. Cir. 2006) (internal quotation marks omitted); see RCFC 56.

## ARGUMENT

Western Digital is entitled to summary judgment on its refund claim. That claim turns on a single, purely legal issue: whether interest on Western Digital's underpayment of its FY 2008 income tax accrued in the period from January 20, 2020, to July 10, 2023—while California was

a federally declared disaster area during the COVID-19 pandemic (and for 60 days thereafter). The plain text of 26 U.S.C. § 7508A(d) in effect at all relevant times squarely answers that question. It expressly and unambiguously required the IRS to disregard that period in determining any underpayment interest that any "qualified taxpayer" owed. Western Digital is indisputably a "qualified taxpayer" as defined in the statute. The statute therefore barred any interest from accruing in that period and guarantees Western Digital a refund of the interest it paid. Although Treasury has attempted to truncate that mandatory period, both by regulation and through litigation positions in other Section 7508A(d) cases arising from the COVID-19 pandemic, courts have rightly rejected those efforts. There is no legal basis for any shorter period. The statutory text resolves the only issue in the case and entitles Western Digital to judgment as a matter of law.

**I. Section 7508A(d) Entitles Western Digital To A Refund Of Underpayment Interest It Paid That Accrued Between January 20, 2020, And July 10, 2023**

Congress enacted Section 7508A(d) to grant "[a]utomatic" relief to taxpayers in disaster areas for the entire duration of the disaster, and for 60 days thereafter, without any exercise of discretion by the Treasury Secretary. Pub. L. No. 116-94, § 205, 133 Stat. 3245. That "[m]andatory" relief, 26 U.S.C. § 7508A(d) (2019), applies by its terms to underpayment interest that Western Digital paid and that had accrued during the declared COVID-19 disaster.

Section 7508A(d) (as applicable to the COVID-19 disaster) states that, for "any qualified taxpayer," the period from "the earliest incident date specified in" a Stafford Act disaster declaration through "60 days after the latest incident date so specified, shall be disregarded in the same manner as a period specified under subsection (a)" of Section 7508A. 26 U.S.C. § 7508A(d) (2019). Subsection (a), in turn, provides that "the Secretary may specify a period of up to 1 year that may be disregarded in determining, under the internal revenue laws, in respect of any tax liability of such taxpayer * * * the amount of any interest." *Id.* § 7508A(a)(2).

Together, those provisions of Section 7508A unambiguously entitle Western Digital to a refund of underpayment interest it paid on its FY 2008 income tax that accrued between January 20, 2020, and July 10, 2023. There is no dispute that Western Digital met the only requirement in Section 7508A(d) to be a "qualified taxpayer": Its principal place of business at all times has been in California, a disaster area throughout that period. 26 U.S.C. § 7508A(d)(2) (2019). And Section 7508A(d), as in force at the relevant times, compelled disregarding the entire disaster period— from "the earliest incident date specified in the [President's] declaration" (January 20, 2020) to the "latest incident date so specified" (May 11, 2023)—plus the 60 days following the disaster period's end (July 10, 2023). *Id.* § 7508A(d)(1). Because that period "shall be disregarded" in determining "the amount of any interest" owed with respect to a federal tax liability, *id.* § 7508A(a)(2), (d)(1), the Secretary must refund interest paid that accrued during that period.

### A.    Western Digital Is A "Qualified Taxpayer"

Western Digital is a "qualified taxpayer" under Section 7508A(d). Section 7508A(d) defined a "qualified taxpayer" to include any taxpayer whose "principal place of business  * * *  is located in a disaster area." 26 U.S.C. § 7508A(d)(2) (2019). A "disaster area" in Section 7508A(d) is any "area" that the President has "determined to warrant  * * *  assistance" "by the Federal Government under the [Stafford Act]." *Id.* § 165(i)(5)(A)-(B); see *id.* § 7508A(d)(3) (2019) (defining "disaster area" to have the same meaning under Section 7508A as Section 165(i)(5)(B)).

Here, the President's Stafford Act declaration made California a disaster area between January 20, 2020, and May 11, 2023. See pp. 3, 5-6, *supra*. Western Digital undisputedly had its principal place of business in California throughout that entire period. It is thus a "qualified taxpayer."

8

**B.        The Period From January 20, 2020, To July 10, 2023, "Shall Be Disregarded" Under Section 7508A(d) In Determining Interest Owed By Western Digital**

Because Western Digital is a qualified taxpayer, Section 7508A(d) entitles it to have the whole disaster period "disregarded" in computing "the amount of any interest" it owed on its FY 2008 federal income tax liability.  26 U.S.C. § 7508A(a)(2), (d)(1) (2019).  Unlike periods that the Secretary has discretion to specify under Section 7508A(a), the disregarding of the period set forth in Section 7508A(d) is "[m]andatory":  It "shall be disregarded in the same manner as a period specified under subsection (a)."  *Id.* § 7508A(d)(1).  The length of that period is equally fixed:  It "begin[s] on the earliest incident date specified in the declaration" and "end[s] on the date which is 60 days after the latest incident date so specified."  *Ibid*.  Section 7508A(d) leaves neither the suspension nor its duration up for debate.

Application of the statute is straightforward here.  The President's March 22, 2020, Stafford Act declaration made the COVID-19 pandemic a federally declared disaster in California, and thus made California a "disaster area" under Section 7508A(d), "beginning on January 20, 2020, and continuing."  85 Fed. Reg. 20,703, 20,703 (Apr. 14, 2020).  The declaration was later amended to "close" the "incident period  * * *  effective May 11, 2023."  88 Fed. Reg. 8884, 8884 (Feb. 10, 2023).  Thus, January 20, 2020, is the "earliest incident date specified in the" relevant disaster declaration, and May 11, 2023, is the "latest incident date so specified."  26 U.S.C. § 7508A(d)(1) (2019).  The period from January 20, 2020, to July 10, 2023—60 days after May 11, 2023—thus "shall be disregarded in the same manner as a period specified under subsection (a)."  *Ibid.*

That unambiguous directive requires suspending any interest accrual during the disregarded period.  Subsection (a) of Section 7508A provides for a period to be "disregarded in determining, under the internal revenue laws, in respect of any tax liability" all of the items specified in paragraphs (a)(1)-(a)(3).  26 U.S.C. § 7508A(a).  That list includes "the amount of any interest."

9

*Id.* § 7508A(a)(2).  Just as disregarding a period in determining a filing deadline requires suspending the deadline during the period disregarded, *Abdo* v. *Commissioner*, 162 T.C. 148, 165 (2024), so, too, disregarding a period in determining the amount of interest requires suspending any interest accrual during the period.  Congress recognized as much when it first amended Section 7508A(a) to include "the amount of any interest" as one of the purposes for which a disaster period is "disregarded," describing the amended provision as creating "authority to suspend running of interest  * * *  by reason of Presidentially declared disaster."  Victims of Terrorism Tax Relief Act of 2001, Pub. L. No. 107-134, § 112(a), (d), 115 Stat. 2433, 2435 (amending 26 U.S.C. § 6404(i)).  To "disregard" a period in determining the amount of interest necessarily means that interest does not accrue during that period.  There is no other plausible way to give effect to the statutory command to disregard a disaster period in determining the amount of interest.

Because Section 7508A(a) requires suspending interest accrual in disregarding a discretionary period, Section 7508A(d) does the same during a mandatory period.  It requires the statutorily specified period to be "disregarded in the same manner" as subsection (a), which provides (as relevant) for a period to be "disregarded in determining  * * *  the amount of any interest" with respect to Western Digital's "tax liability."  26 U.S.C. § 7508A(a)(2), (d) (2019).  Any interest that accrued between January 20, 2020, and July 10, 2023, must be excluded from the interest Western Digital owes.

Treasury has taken a different view.  In 2021, it issued a regulation purporting to limit the purposes for which a period must be disregarded under subsection (d).  Instead of requiring that a disaster period be disregarded for all of the purposes set forth in paragraphs (a)(1)-(a)(3), Treasury's regulation posits that Section 7508A(d) requires disregarding the disaster period only for purposes selected by the Secretary in his discretion under Section 7508A(a).  86 Fed. Reg. 31,146,

31,147-31,148, 31,150 (June 11, 2021) (26 C.F.R. § 301.7508A-1(g)(1)-(2)).  But that regulation is irrelevant because it flouts the statute and has no force.  "Statutes trump regulations."  *3M* v. *Commissioner*, 154 F.4th 574, 576 (8th Cir. 2025).  "An agency has no power to  * * *  rewrit[e] unambiguous statutory terms." *Utility Air Regulatory Group* v. *EPA*, 573 U.S. 302, 325 (2014). And after *Loper Bright Enterprises* v. *Raimondo*, 603 U.S. 369 (2024), the Court could not treat even ambiguous statutory language as a license to defer to an agency's preferred reading.  The Court must instead give effect to the statute's single "best reading."  *Id.* at 400; see *id.* at 412-413.  The unambiguous, and certainly best, reading of Section 7508A refutes Treasury's 2021 regulation. Section 7508A(a) grants the Secretary the discretion to determine *whether* to disregard a period during which a taxpayer was affected by a disaster and, if so, the *duration* of that period (up to a maximum of one year).  It does not grant the Secretary the discretion to determine the purposes for which that period is disregarded, *i.e.*, which statutory consequences follow once a period is disregarded.  And in all events, even if subsection (a) did grant the Secretary leeway to cherry-pick the purposes for which a disaster period will be disregarded under *that* provision, Section 7508A(d) unambiguously does not.  Section 7508A(d) states that the disaster period, as defined in the statute, "*shall be* disregarded" for the purposes listed in subsection (a), which include deter-mining the amount of any interest.  26 U.S.C. § 7508A(d) (2019) (emphasis added).  As the Tax Court recognized, Section 7508A(d) "provides for an unambiguously self-executing postponement period that incorporates all of the acts referenced by section 7508A(a)."  *Abdo*, 162 T.C. at 165.

Here, Western Digital paid the IRS's $106,598,473.76 bill for its FY 2008 income tax, including $52,962,631.76 in underpayment interest that accrued between September 16, 2008, and July 3, 2023 (the bill's date).  But Section 7508A(d) suspended accrual of any interest between January 20, 2020, and July 10, 2023.  Western Digital is entitled to a refund of the approximately

11

$20,764,747 in underpayment interest it paid that accrued during the suspended period, plus statutory interest on its overpayment as provided by law, see 26 U.S.C. § 6611.

## II.   There Is No Lawful Basis To Limit Western Digital's Refund To Any Shorter Period

In other litigation, the government has argued unsuccessfully that Section 7508A(d) should be read to require disregarding *not* the full declared disaster period plus 60 days, but only various shorter periods.  But courts have correctly rejected the government's efforts to rewrite the statute.  There is no valid legal basis for limiting the statutory period as the government has proposed— either to a fixed period of 60 days, see *Kwong* v. *United States*, 179 Fed. Cl. 382, 388 (2025), or to no more than a year under Treasury's own invalid regulation, 26 C.F.R. § 301.7508A-1(g)(3)(ii).

### A.   The Period Disregarded Under Section 7508A(d) Is Not Limited To 60 Days

Section 7508A(d) provided that the mandatory period to be "disregarded" runs from "the earliest incident date specified in the [disaster] declaration" to "60 days after the latest incident date so specified."  26 U.S.C. § 7508A(d)(1) (2019).  In *Kwong*, the government nevertheless contended that Section 7508A(d) required disregarding only 60 days total, on the theory that the same Stafford Act declaration at issue in this case specified January 20, 2020, as the sole incident date.  179 Fed. Cl. at 388.  The Court rejected that argument, *ibid.*, and it should fail if reprised here:  The government's position rests on an incorrect factual premise and an untenable reading of the statute.

Contrary to the government's contention in *Kwong*, the President's March 22, 2020, disaster declaration did not deem COVID-19 a major disaster for just a single (past) day.  The declaration described the "major disaster" as "*beginning* on January 20, 2020, *and continuing*."  85 Fed. Reg. at 20,703 (emphases added).  The declaration further expressly "authorized" FEMA "to make changes to this declaration," *ibid.*, and FEMA later exercised that authority by amending the COVID-19 Stafford Act declarations for California and other States to "close" the "incident pe-

riod" effective May 11, 2023.  88 Fed. Reg. at 8884.  The latest incident period "specified" in the amended declaration is therefore May 11, 2023.  26 U.S.C. § 7508A(d)(1) (2019); see *Kwong*, 179 Fed. Cl. at 387 (observing that the "declaration was later amended to end on May 11, 2023").

As the Court in *Kwong* explained, the government's position cannot be reconciled with the declaration's text or common sense.  "If the emergency declaration was intended to include only January 20, 2020, the declaration would not have also said, 'and continuing.'"  *Kwong*, 179 Fed. Cl. at 388.  And it is utterly implausible that the President in March 2020 would have declared COVID-19 a one-day disaster that had ravaged every State yet run its course in 24 hours.  Moreover, if FEMA's action did not amend the declaration to establish its end date, the COVID-19 disaster would *still* be "continuing" today.  85 Fed. Reg. at 20,703.  The government in *Kwong* did not endorse that outcome, but it pointed to nothing else that could have ended a "continuing" presidentially declared disaster.  Its position hinges on reading "and continuing" out of the declaration.

The government's position in *Kwong* would also flout Congress's judgment in amending Section 7508A(d) in November 2021—by either rendering that amendment practically meaningless in the class of circumstances it targeted, or else defying Congress's judgment to make that change apply only prospectively.  In November 2021, Congress amended Section 7508A(d) to change the end of the mandatory suspension period from "the date which is 60 days after the latest incident date so specified," 26 U.S.C. § 7508A(d)(1) (2019), to "the date which is 60 days after the later of" the "earliest incident date" or "the date [the Stafford Act] declaration was issued," *id*. § 7508A(d)(1) (current text).  Congress made that revision only prospectively, applying it to disasters declared after the statute became law.  Pub. L. No. 117-58, § 80501(b), 135 Stat. 1335.

The government's position flouts two settled statutory-interpretation principles.  First, courts presume that Congress "intends its amendment[s] to have real and substantial effect."

13

*Bufkin* v. *Collins*, 604 U.S. 369, 386 (2025).  But under the government's view in *Kwong*, the 2021 amendment changed nothing in cases of disasters declared to be continuing.  For any ongoing disaster—which necessarily will not have an identified end date—the *only* incident date explicitly specified in such a declaration is the date the disaster began.  At most, a declaration of a continuing disaster implicitly specifies that the disaster still exists on the date of the declaration.  The government's view of the *pre*-2021 statute thus would produce exactly the same outcome as the 2021 amendment:  The mandatory suspension would always be only (A) 60 days from the earliest incident date or (B) at most, from the earliest incident date until 60 days after the declaration.  Courts should be loath to read statutory amendments to accomplish nothing.

Second, courts respect Congress's determination to make new legislation apply only *after* a specified date.  Where "Congress [has] chose[n] not to write a retroactive statute," courts should not "impermissibly second-guess Congress' decision not to subject past" events "to a new standard." *Nestlé USA, Inc.* v. *Doe*, 593 U.S. 628, 639 (2021); see, *e.g.*, *United States* v. *Will*, 449 U.S. 200, 227-229 (1980); see also *Landgraf* v. *USI Film Products*, 511 U.S. 244, 272 (1994) (courts presume that legislation applies *only* prospectively unless Congress "clear[ly]" says otherwise).  But the government's position in *Kwong* would make the 2021 amendment *retroactive* as to prior disasters.  That contravenes Congress's express judgment in applying the 2021 amendment only *prospectively* to disasters declared after it became law.  *Kwong* thus correctly rejected the government's effort to confine suspension to just 60 days.

**B.    The Period Disregarded Under Section 7508A(d) Is Not Limited To One Year**

*Kwong* also rightly rejected the government's fallback bid to limit the mandatory period to be disregarded under Section 7508A(d) to one year.  179 Fed. Cl. at 387.  In the same 2021 regulation discussed above, Treasury sought to circumscribe that mandatory relief to one year, stating that "[i]n no event will the mandatory 60-day postponement period be calculated to exceed one year."  86 Fed.

14

Reg. at 31,149, 31,151 (26 C.F.R. § 301.7508A-1(g)(3)(ii)).  Treasury invoked that regulation in *Kwong* to cabin the Section 7508A(d) period for the same Stafford Act declaration at issue here to one year.  But its atextual, regulation-based theory failed there and should also fail here.

Treasury, again, has no authority to "rewrit[e] unambiguous statutory terms."  *Utility Air Regulatory Group*, 573 U.S. at 325.  The Court must give effect to the statute's "best reading," irrespective of the agency's contrary position.  *Loper Bright*, 603 U.S. at 400; see *id.* at 412-413.  That principle is dispositive here because, as *Kwong* explained, the statute forecloses the government's invented one-year limitation, reflecting Congress's policy judgment that the full disaster period should be disregarded.  "Nothing in subsection (d) mentions or implies a one-year limit."  179 Fed. Cl. at 388.  Section 7508A(d)(1) spells out the beginning and end dates of the period that "shall be disregarded," without any hint of a one-year maximum.  Especially in a statute that specifies in detail how to calculate the period to be "disregarded" and makes that period mandatory, 26 U.S.C. § 7508A(d) (2019), it is implausible that Congress imposed an unstated, one-year limit.

Treasury purported to justify a one-year cap by asserting that it "defies logic" for Congress to impose a mandatory suspension period with "no limit" (besides the duration of the declared disaster) while confining a discretionary suspension under subsection (a) to one year.  86 Fed. Reg. at 31,149.  But the statute, not Treasury's policy views, controls.  See *Loper Bright*, 603 U.S. at 412-413.  Moreover, the statutory text, structure, and history confirm that no incongruity exists. When it enacted Section 7508A(d), Congress provided that the mandatory period under subsection (d) "shall be in addition to (or concurrent with, as the case may be) any period specified under subsection (a)."  26 U.S.C. § 7508A(d)(5) (2019).  Congress thus expressly recognized that subsection (d)'s period runs independently of subsection (a)'s up-to-one-year period—and can exceed that period by running both "concurrent with" and "in addition" to it.  *Ibid.*; see *Abdo*, 162 T.C. at 166

15

(explaining that "broad and inclusive language" of (d)(5) confirms that Congress intended "to allow a mandatory extension described under section 7508A(d) to operate independently from any discretionary extension specified under section 7508A(a)"). What the government portrayed in *Kwong* as an unintended anomaly Congress could not have envisioned is in reality a consequence Congress acknowledged and underscored in the statutory text.

Tellingly, Treasury's own regulations also recognize that "the period determined by the Secretary in exercising discretion under section 7508A(a)" may "en[d] prior to 60 days after the latest incident date." 26 C.F.R. § 301.7508A-1(g)(3). In that event, in "accordance with section 7508(d)(5)," the period under Section 7508A(d) will "run concurrently" for the period specified by the Secretary in its discretion "*and then continue* running in addition to the period determined by the Secretary under section 7508A(a)." *Ibid.* (emphasis added). The government itself thus acknowledges that the statute contemplates a mandatory suspension period outlasting a discretionary one.

Congress's 2021 amendment to Section 7508A(d) again cements the point. As discussed, that amendment changed "the automatic extension * * * from an unlimited period, as long as the disaster was ongoing, to a maximum of 60 days." *Kwong*, 179 Fed. Cl. at 386-87. But Congress did not make the 2021 amendment retroactive; it applies only to disasters declared after the amendment became law. Congress thus maintained the potentially unlimited automatic extension of tax relief for any federal disaster declaration made *before* November 2021. See p. 5, *supra*. The amendment addressed the ostensible concern behind Treasury's regulation, but Congress struck a balance by changing the law only for future disasters and leaving the law applicable to prior disasters unaltered.

The most the government can say is that a "disaster declaration" was "unprecedented" for an event like COVID-19 "that lasted more than three years." *Kwong*, 179 Fed. Cl. at 387. That may be true but is of no moment. "[I]t is ultimately the provisions of our laws rather than the principal

16

concerns of our legislators by which we are governed." *Oncale* v. *Sundowner Offshore Services, Inc.*, 523 U.S. 75, 79 (1998). "[T]he fact that a statute can be applied in situations not expressly anticipated by Congress" demonstrates "breadth," not "ambiguity." *PGA Tour, Inc.* v. *Martin*, 532 U.S. 661, 689 (2001) (quoting *Pennsylvania Department of Corrections* v. *Yeskey*, 524 U.S. 206, 212 (1998)). Section 7508A(d)'s text as applicable to the March 22, 2020, Stafford Act disaster declaration speaks broadly but clearly, mandating that the full period of a presidentially declared disaster be disregarded in determining interest with respect to any federal tax liability—with no limitation to short-fuse disasters and no carveout for declared disasters that last much longer than those that came before.

This case, in any event, does not require testing the outer limits of those interpretive principles. Congress itself revisited this issue in the thick of the COVID-19 pandemic—undoubtedly well aware of the continuing major-disaster declarations that the President had made in every State. But rather than attempt to modify Section 7508A(d) with respect to past or even ongoing disasters, Con-gress made a clear choice to revise the law only going forward. That choice controls and forecloses the government's attempt to rewrite the law after the fact.

### CONCLUSION

Because the statute unambiguously requires that the COVID-19 disaster period and the 60 days that follow be disregarded in determining underpayment interest on a federal tax liability, Western Digital is entitled to judgment as a matter of law. This Court should grant summary judgment to Western Digital in the amount of approximately $20,764,747, or such amount as the Court determines to be refundable, plus statutory interest on that amount as provided by law.

Date: April 10, 2026

Respectfully submitted,

/s/ Saul Mezei
Saul Mezei
Jonathan C. Bond
John F. Craig, III
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
Telephone: 202.955.8500
Facsimile: 202.467.0539
SMezei@gibsondunn.com
JBond@gibsondunn.com
JCraig@gibsondunn.com

*Attorneys for Plaintiff*

18